IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

BRENDA HARRISON,                      :
                                      :
    Plaintiff,                        :
                                      :
v.                                    :    CIVIL ACTION 06-0166-M
                                      :
JO ANNE B. BARNHART,                  :
Commissioner of                       :
Social Security,                      :
                                      :
    Defendant.                        :


MEMORANDUM OPINION AND ORDER


In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19).  Oral argument was waived in this action (Doc. 18).  Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Ser-

vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born September 27, 1960. At the time of the most recent administrative hearing, Harrison was forty-four years old, had completed some post-high school education (Tr. 268), and had previous work experience as a licensed practical nurse, substitute teacher, and tax preparer (Tr. 281). In claiming benefits, Plaintiff alleges disability due to arthritis, back pain, diabetes, hypertension, cognitive decline, depression, and sleep apnea (Doc. 10).

The Plaintiff protectively filed applications for disability benefits and SSI on June 19, 2002 (Tr. 83-85, 235-38). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Harrison could perform her past relevant work as a Teacher's Aide and a Tax Preparer (Tr. 10-26).[1] Plaintiff requested review of the hearing decision (Tr.

---

[1]This is actually the second decision by the ALJ; for a complete history of this action at the administrative level, see the ALJ's summary at Tr. 13.

246-52) by the Appeals Council, but it was denied (Tr. 6-8).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Harrison alleges that:  (1) The ALJ improperly denied the opinions of the examining doctors of record, including her treating doctor, relying instead on the opinions of non-examining physicians; (2) the medical experts (hereinafter *ME*'s) were not qualified to provide evidence; and (3) the ALJ did not develop a full and fair record (Doc. 11).  Defendant has responded to—and denies—these claims (Doc. 14).

Plaintiff first claims that the ALJ improperly denied the opinions of the examining doctors of record, including her treating doctor, relying instead on the opinions of non-examining physicians.  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[2] *see also* 20 C.F.R. § 404.1527 (2005).  The Court further notes that the Eleventh Circuit Court of Appeals has held that the opinion of a non-examining physician "is

---

[2] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (*citing Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)).

In his decision, the ALJ rejected the opinions of examining physicians Dr. Bruce Taylor, a treating doctor (Tr. 205-22, 228-34), Psychologist Donald W. Blanton (Tr. 178-83), and Psychologist John Goff (Tr. 188-96), while relying on the opinions of Dr. James Anderson, Psychologist Doug McKeown, and Dr. W. B. Stonecypher although they never examined Harrison (Tr. 20-22). Anderson and McKeown testified at the second evidentiary hearing as medical experts while Stonecypher provided an opinion in the initial stages of the administrative process (Tr. 298-307). On first blush, Plaintiff's claim appeared to have merit. However, after comparing the decision with the evidence of record, the Court found substantial support for the ALJ's decision.

The ALJ specifically rejected the opinions of Dr. Taylor because his "clinical records provide no support for the significant limitations shown in his Medical Source Statement (Physical) and his Clinical Assessment of Pain forms" (Tr. 21). Taylor had indicated that Harrison was never capable of lifting or carrying more than five pounds and could never stoop, crouch,

4

kneel, crawl, or climb (Tr. 230-31); the doctor also indicated that Plaintiff's pain would always be a significant element in her life, that it would distract her from adequately performing daily activities, and that physical activity would increase her pain so much that she would not be able to complete tasks (Tr. 232-33).  Dr. Taylor's medical notes, spanning January 22, 2004 through December 28, 2004, however, provide very little information regarding Plaintiff's impairments (Tr. 205-22, 228-29).  While there are repeat prescriptions for celebrex[3] and tramadol,[4] there is nothing else to support the findings of extreme limitation and pain that Dr. Taylor asserts.[5]

Dr. Anderson testified as a medical expert that he had reviewed all of the medical evidence and determined that she had asymptomatic hypertension and insulin-dependent diabetes but that

---

[3]*Celebrex* is used to relieve the signs and symptoms of osteoarthritis, rheumatoid arthritis in adults, and for the management of acute pain in adults.  *Physician's Desk Reference* 2585-89 (58th ed. 2004).

[4]Tramadol, also known as *Ultram,* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2064-65 (52nd ed. 1998).

[5]The Court notes Plaintiff's objection to the ALJ's finding that Dr. Taylor had failed to confirm his opinions with objective medical evidence (Doc. 11, p. 12).  The Court is aware that the Eleventh Circuit Court of Appeals has held that "arthritis is an affliction of such common occurrence that laboratory findings are unnecessary; the obvious manifestations of arthritis during a physical examination qualify as objective medical facts or clinical findings."  *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (*citing Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982)).  The Court finds, however, that the ALJ's finding on this point of law is, at most, harmless error. Dr. Taylor's notes are so brief and lacking in detail that they do not suggest that any comprehensive physical examination ever took place.

she was capable of performing sedentary and, maybe, light work (Tr. 298-302). The ALJ gave weight to this testimony (Tr. 20).

Dr. W. B. Stonecypher never examined Plaintiff, yet, after reviewing the available evidence of record at that time, found Harrison capable of performing light work[6] (Tr. 165-72). As support for his opinion, Stonecypher relied on the physical examination of Neurologist Dr. Jamal A. Halim who found Harrison capable of performing medium work (Tr. 170-71; *cf.* Tr. 163-64). The ALJ gave weight to Stonecypher's opinion as supported by the evidence provided by Dr. Halim (Tr. 21).

The ALJ rejected the opinion of Psychologist Blanton as being "inconsistent with his own report and unsupported by the objective evidence of record" (Tr. 22). The ALJ specifically pointed out the inconsistencies in his "diagnosis of a GAF of 60 and description of the claimant's daily activities, social functioning, and memory functioning" with "his ratings of moderately severe psychological limitations;" the ALJ also expressed the opinion that the Psychologist had relied too

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b) (2005).

heavily on Plaintiff's subjective complaints in reaching his conclusions although she was not a credible witness (*id.*).[7]

The record shows that Blanton, after an examination on April 25, 2003, indicated his belief that Harrison was moderately severely limited in her ability to maintain social functioning, perform daily activities, and maintain concentration in completing tasks in a timely manner (Tr. 182).  The Psychologist's mental examination, however, revealed normal thought and conversation, intact associations, and no confusion; there was no evidence of hallucination, delusion, persecutory type fear, or phobia (Tr. 179-80).  She was oriented to time, place, person and situation, and had average intelligence; her "memory was fair for immediate, recent and remote recall" (Tr. 180).  Blanton diagnosed Harrison to have pain disorder with depression, an obsessive personality and a Global Assessment of Function of 60[8] (Tr. 181).

The Court agrees with the ALJ's conclusion that these findings do not suggest moderately severe limitations in maintaining concentration or social functioning.  Though

---

[7]The ALJ specifically found that Plaintiff was not credible (Tr. 22), a finding not challenged in this action.

[8]Defendant has stated that "[a] GAF score between 51-60 indicates "moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-work)."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) (*see* Doc. 14, p. 7 n.4).

Plaintiff reported that she did not have much of a social life (Tr. 180), Blanton's examination findings do not provide support for a finding that she cannot maintain social functioning.

The ALJ rejected the opinions of Psychologist Goff based on his "finding that the claimant has suffered a decline in her cognitive functioning due to longstanding and poorly controlled diabetes and hypertension" (Tr. 22).  The ALJ found that neither Harrison's diabetes nor hypertension were poorly controlled (Tr. 23-24).

Goff examined Harrison on October 31, 2003 and administered several tests, including the 21-item test from which he deduced that she was not malingering throughout the examination (Tr. 188-96).  On the WAIS-III, Plaintiff scored a verbal IQ of 87, a performance IQ of 77, and a full scale IQ of 80, placing her "toward the lower end of the low average range of psychometric intelligence" (Tr. 190).  Harrison also took the Wechsler Test of Adult Reading (hereinafter *WTAR*) which is "a technique for estimating pre-morbid intellectual functioning;" her predicted scores of 94, 95, and 92 indicated a 7-point, 18-point, and 12-point decline from the actual WAIS-III scores (*id.*).  Scores from the Wechsler Memory Scale-III were low average (Tr. 191).  The Minnesota Multiphasic Personality Inventory-2 revealed an acceptable response style for dealing with common stresses; Harrison's clinical profile suggested she was "very depressed"

(*id.*).  Goff diagnosed Plaintiff to have Adjustment Disorder with a moderate Depressed Mood (Tr. 193).  The Psychologist then completed a mental medical source statement form in which he indicated that Harrison was markedly limited in her interests, in performing daily activities, in her ability to understand, remember, and carry out simple and complex instructions and repetitive tasks; she was also markedly limited in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual, and complete a normal workday and workweek without interruptions from psychologically based symptoms at a consistent pace (Tr. 194-95).  Finally, Goff thought Harrison was markedly limited in her ability to respond appropriately to changes in the work setting, customary work pressures, and in her ability to be aware of normal hazards and take appropriate precautions (Tr. 196).

   Psychologist McKeown testified at the evidentiary hearing that there was no test that really measured a decline in IQ; he went on to say that the WTAR, which Goff used, measured the "presence of any specific organic factors" (Tr. 305).  He went on to testify that one had to have a baseline intellectual assessment to measure a decline; McKeown further rejected the high school academic grades as having set a baseline as those scores reflect something other than just IQ (Tr. 305-06).

McKeown also noted the psychological evaluation of Psychologist Glen D. King who found her to be malingering[9] (Tr. 304; *cf.* 198-203). The ALJ gave weight to McKeown's testimony as a medical expert (Tr. 20).

After examining all of the evidence of record, the Court finds substantial support for the ALJ's decision. The medical records do not support the conclusions of Dr. Taylor or Psychologists Blanton and Goff. It is incumbent on Plaintiff to demonstrate her impairments and to further show that she cannot perform her past relevant work. *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (*citing Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)). Harrison has failed in this regard. Even though the ALJ relied on non-examining physicians to reach his decision, the decisions of those physicians and psychologists were based on the records of others who did perform examinations. The Court finds that substantial evidence supports that decision. Plaintiff's claim is without merit.

Harrison's second claim is that the medical experts were not qualified to provide evidence. According to the Social Security regulations, an ALJ "may [] ask for and consider opinions from medical experts on the nature and severity of your impairment(s)

---

[9] King administered the WAIS-III to Harrison who had scores of 66, 58, and a Full Scale IQ of 59, a significant drop-off from those Harrison received when tested by Goff. King went on to find that Plaintiff had no marked deficits in any area (Tr. 201).

and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart."  20 C.F.R. § 404.1527(f)(2)(iii) (2005).  The testimony of these medical experts is supposed to be evaluated the same way as the other evidence of record.

The record provides the resumes of Dr. Anderson (Tr. 72) and Psychologist McKeown (Tr. 73).  Those records demonstrate that both men had appropriate degrees and credentials and had years of experience in their respective fields.  The Court finds no merit in Plaintiff's claim that they were not qualified.

Harrison has also claimed that the ALJ did not develop a full and fair record.  Plaintiff, more specifically, asserted that the ALJ should have ordered a consultative psychological examination if he doubted the conclusions of Goff; Harrison noted that the ALJ had referred Plaintiff to Psychologist King but had ordered him not to perform neuropsychological testing (Doc. 11, p. 10; *cf.* Tr. 198).  The Court notes that the Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the Administrative Law Judge even if the claimant is represented by counsel.  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The record contains three exams from examining Psychologists Blanton, Goff, and King as well as the testimony of ME McKeown; the Court also notes that Plaintiff was examined by Neurologist

Halim.  The Court finds that this evidence was sufficient for the ALJ to have reached a decision and that decision was supported by substantial evidence.  The Court finds that Plaintiff has not demonstrated that another consultative psychological examination was necessary.

Harrison has raised three different claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate order.

DONE this 31st day of October, 2006.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE